UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PRODIGY FINANCE CM2021-1 DAC,

                        Petitioner,

v.                                                            3:24-CV-1361 (GTS)

ZHIGE ZHAO,

                        Respondent.
_____

APPEARANCES:                                      OF COUNSEL:

VENABLE LLP                                     LAWRENCE H. COOKE, II ESQ.
  Counsel for Petitioner
151 West 42nd Street – 49th Floor
New York, NY 10036

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil action filed by Prodigy Finance CM2021-1 DAC ("Petitioner") against Zhige Zhao ("Respondent") to enforce a foreign arbitral award, is Petitioner's unopposed motion for default judgment. (Dkt. No. 9.) For the reasons set forth below, Petitioner's motion is granted.

**I.      RELEVANT BACKGROUND**

        Petitioner is an Irish designated activity company limited by shares, with an address of 2nd Floor, Block 5, Irish Life Centre, Abbey Street Lower, Dublin 1, D01 P767, Ireland. (Dkt. No. 1, at ¶ 1.) Respondent is an individual, alleged to reside in Pittsburgh, Pennsylvania, who received a loan from Prodigy Finance Limited, Petitioner's predecessor-in-interest, paid directly to Cornell University in Ithaca, New York, where Respondent was a postgraduate student. (*Id*., at

1

¶ 2; Dkt. No. 1, Attach. 3, at 3; Dkt. No. 9, Attach. 1, at ¶ 10.) At the time that the Parties entered the Loan Agreement, Respondent's address was 2-3-403 Tsignshua University South, 100080, Beijing, People's Republic of China. (*Id*. at 2.) Upon and prior to signing the Loan Agreement, Respondent informed Prodigy Finance Limited that she was relocating to 519 Warren Road, Ithaca, NY 14805. (Dkt. No. 1, at ¶ 3.) Prodigy Finance Limited "administers, manages, and services the loans held by Petitioner" (Dkt. No. 1, at 1 n.1), and is a company registered in England and Wales with an address of Palladium House 1-4 Argyll Street, London, W1F 7LD, United Kingdom. (Dkt. No. 1, Attach. 3, at 13.)

      A.      **The Loan Agreement**

On August 20, 2019, Prodigy Finance Limited entered into a loan agreement entitled "Fixed Sum Loan Agreement Regulated by the Consumer Credit Act of 1974" ("Loan Agreement") with Respondent. (Dkt. No. 1, at ¶ 9; Dkt. No. 1, Attach. 3 [Loan Agreement].) Pursuant to that agreement, Prodigy Finance Limited loaned Respondent a principle sum of $32,420.00 at an interest rate of 9.16% per annum and an annual percentage rate ("APR") of 9.79%. (Dkt. No. 1, Attach. 3, at 2-4.) The funds were sent directly to Cornell University in accordance with the terms of the Loan Agreement. (Dkt. No. 1, at ¶ 2; Dkt. No. 1, Attach. 3, at 3 ["We will promptly pay the amount to Cornell University . . . $16,210.00 on or around 30 August 2019 and $16,210.00 on or around 3 January 2020."]; Dkt. No. 1, Attach. 2, at ¶ 18.) By the terms of the Loan Agreement, Respondent was to repay the loan from November 28, 2021, to October 28, 2036, for a total repayment amount of $72,911.43. (Dkt. No. 1, Attach. 3, at 2-5.)

Under the Loan Agreement, Prodigy Finance Limited was entitled to "unilaterally assign [its] rights and obligations . . . to a third party[.]" (Dkt. No. 1, at ¶ 10; Dkt. No. 1, Attach. 3, at ¶ 9.2.) On August 30, 2019, Prodigy Finance Limited "assigned all of its legal and beneficial rights

under the [Loan] Agreement to Prodigy Finance CM2018-1 DAC." (Dkt. No. 1, at ¶ 11; Dkt. No. 1, Attach. 4.) On July 16, 2021, Prodigy Finance CM2018-1 DAC "assigned all of its legal and beneficial rights under the [Loan] Agreement to Petitioner [ ]." (Dkt. No. 1, at ¶ 12; Dkt. No. 1, Attach 5.)

Under the Loan Agreement, Prodigy Finance Limited could unilaterally vary the terms of the Agreement for any of five enumerated reasons. (Dkt. No. 1, at ¶ 13; Dkt. No. 1, Attach. 3, at ¶ 8.1.) It exercised this right on two occasions following the signing of the initial agreement: "[o]n October 31, 2019, Prodigy notified Respondents of variations . . . that would come into effect on November 30, 2019[,]" and "[o]n May 25, 2021, Prodigy notified Respondent of variations . . . that would come into effect on June 24, 2021." (Dkt. No. 1, at ¶ 14-15; Dkt. No. 1, Attach. 6 [October 31, 2019 Notice]; Dkt. No. 1, Attach. 7 [May 25, 2021 Notice].)[1]

The Loan Agreement was "enforceable under the laws of England, including its arbitration laws." (Dkt. No. 1, at ¶ 16; Dkt. No. 1, Attach 7, at ¶ 10.1 ["This Agreement shall be governed by English law."]) Further, the Loan Agreement stipulated that any dispute between the parties where the amount in dispute exceeds £5,000.00, or the foreign currency equivalent thereof, "shall be referred to the Chartered Institute of Arbitrators ("CIArb") to be determined by final and binding arbitration." (Dkt. No. 1, Attach. 7, at ¶ 10.4.) Moreover, in the event of such referral to arbitration, there was to be a single arbitrator with the legal place of the arbitration being London, England, though parties were permitted to hold any hearings by video-link so that a hearing would not necessitate travel to the United Kingdom. (*Id.* at ¶ 10.4(c)-(d).)

---

[1]    The Arbitrator found that each of these amendments (i.e., on October 30, 2019, and May 25, 2021) had no bearing on "the issues that ar[o]se in [the] arbitration." (Dkt. No. 1, Attach. 2, at ¶ 10.)

On January 7, 2022, Respondent defaulted on the Loan Agreement by failing to pay the monthly loan repayment amount; and, as a result, on January 13, 2022, Prodigy Finance Limited issued a Notice of Sums in Arrears to Respondent. (Dkt. No. 1, at ¶ 20; Dkt. No. 1, Attach. 8 [First Notice of Sums in Arrears].) On July 12, 2022, Prodigy Finance Limited issued a second Notice of Sums in Arrears to Respondent for continued failure to pay. (Dkt. No. 1, Attach. 9 [Second Notice of Sums in Arrears].) On January 11, 2023, Prodigy Finance Limited issued a third Notice of Sums in Arrears to Respondent for continued failure to pay. (Dkt. No. 1, Attach. 10 [Third Notice of Sums in Arrears].)[2]

On June 14, 2023, because Respondent had still not cured the arrears, Prodigy Finance Limited issued a Notice of Default to Respondent noting that Respondent had breached the Loan Agreement and indicating that Prodigy Finance Limited would invoke the arbitration aforementioned provisions in the Agreement. (Dkt. No. 1, at ¶ 23; Dkt. No. 1, Attach. 11 [Notice of Default on Loan Agreement].) On August 12, 2023, after Respondent's continued failure to cure the arrears, Prodigy Finance Limited issued a final notice to Respondent indicating that it was terminating the Loan Agreement and would invoke the arbitration provisions in the agreement without further notice. (Dkt. No. 1, at ¶ 24; Dkt. No. 1, Attach. 12.)

**B.    The Arbitration**

On April 24, 2023, Prodigy Finance Limited, on behalf of Petitioner, filed an application for an arbitrator with CIArb in accordance with the Loan Agreement. (Dkt. No. 1, at ¶ 25-26; Dkt. No. 1, Attach. 13; Dkt. No. 1, Attach. 7, at ¶ 10.4.) On May 16, 2023, CIArb appointed Arbitrator David Phillips ("the Arbitrator") and the Parties were notified of that action on the

---

[2]    The Third Notice of Sums in Arrears is inaccurately entitled "Second Notice of Sums in Arrears . . . ," which appears to have been a typographical error.

4

same day. (Dkt. No. 1, Attach. 2, at ¶ 2.) On July 26, 2023, the Arbitrator issued his Award Decision. (Dkt. No. 1, Attach. 2.)

As an initial matter, the Arbitrator found that Respondent had proper notice of the arbitration proceedings because the papers for arbitration were sent to Respondent in two different ways: (1) an email was sent to the email address that Respondent had provided at the time the parties entered into the Loan Agreement and (2) a DHL package was sent via courier to the Ithaca, New York, address that Respondent had provided.[3] (*Id*. at 13-14.) The Arbitrator found by a "balance of probabilities" that both of these communications reached Respondent. (*Id*.) Despite receiving notice, Respondent took "no positive step in the proceedings[,]" failing to acknowledge receipt of any communications from the Arbitrator or Petitioner, comply with procedural requirements, pay her share of CIArb's fees for arbitration,[4] or put forth any affirmative defense or challenge to the case against her whatsoever. (*Id*. at ¶¶ 12-15, 28.) As a result, the Arbitrator found that Respondent "elected not to participate in the arbitration[,]" and therefore the Arbitrator "proceed[ed] to determine the dispute without any participation from [Respondent]." (*Id*. at ¶ 15.)

Proceeding in the arbitration without Respondent "d[id] not relive [Petitioner] of the responsibility of proving its case . . ." by a preponderance of the evidence. (*Id*. at ¶ 28.) Rather, it meant that Respondent lacked a challenge or defense in the arbitration absent her own participation. (*Id*.) Ultimately, the Arbitrator made the following findings: (1) Respondent

---

[3]     Both the email address and physical address at which Respondent was contacted were "the most up to date email and physical addresses that had been provided by h[er]." (Dkt. No. 1, Attach. 2, at ¶ 15.)

[4]     Petitioner paid Respondent's share of the fee in May 2023. (Dkt. No. 1, Attach. 2, at ¶ 13.)

entered into the loan agreement; (2) Prodigy Finance Limited disbursed the funds to Cornell University pursuant to the Loan Agreement; (3) Respondent failed to make any of the repayments required under the Loan Agreement; (4) Prodigy Finance Limited attempted to contact Respondent via email and telephone, and served Respondent with the proper notices under English law; (5) Respondent continued to fail to make any of the required repayments or communicate with Prodigy Finance Limited; (6) Respondent was in breach of the Loan Agreement; (7) Petitioner validly terminated the Loan Agreement on September 14, 2022; and (8) the amount outstanding under the Loan Agreement on September 14, 2022, including interest, was a sum of $40,895.95. (*Id*. at ¶ 29-30.)

Accordingly, the Arbitrator rendered an award of $40,895.95, with interest payments at an annual rate of 9.27% accruing from September 14, 2022, in favor of Petitioner. (*Id*. at ¶ 31-32.) Further, the Arbitrator directed Respondent to pay the arbitration fee of £3,000 and to pay £1,000 for costs and expenses, with each sum accruing interest at an annual rate of 6%. (*Id*. at ¶ 33.)

    **C.**    **The Petition and Service Thereof**

On November 11, 2024, Petitioner filed the current petition to confirm the final foreign arbitral award entered against Respondent on July 6, 2023, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (Dec. 29, 1970), *reprinted at* 9 U.S.C. §§ 201-208. (*See generally* Dkt. No. 1.) On November 27, 2024, Petitioner filed a motion for alternative service pursuant to Fed. R. Civ. P. 4(e). (Dkt. No. 3.) On March 17, 2025, the Court granted Petitioner's motion for alternative service, ordering "personal service on [Respondent] be effected by Counsel for Petitioner sending the summons, complaint, and corresponding exhibits by email to zhaozhige123@163.com and certified mail to

her most recent address in Ithaca, New York." (Dkt. No. 4.) On March 24, 2025, Petitioner filed a Certificate of Service. (Dkt. No. 5.)

### D. Current Motion for Default Judgment

On April 14, 2025, after Respondent failed to appear or respond, Petitioner to requested Entry of Default. (Dkt. No. 6.) On the same day, the Clerk of Court accordingly filed a Certificate of Entry of Default. (Dkt. No. 7.) On April 21, 2025, the Court issued a Text Order directing Petitioner to either file a Motion for Default Judgment or Status Report on or before May 21, 2025. (Dkt. No. 8.) On May 21, 2025, pursuant to the Court's Text Order, Petitioner filed the present Motion for Default Judgment. (Dkt. No. 9.) Again, Petitioner filed a Certificate of Service with respect to its motion. (Dkt. No. 10.) To date, Respondent has failed to respond to Petitioner's motion. (*See generally* Docket Sheet.)

Generally, in its motion for default judgment, Petitioner makes two arguments: (1) it has met the procedural requirements necessary in order to obtain default judgment; and (2) it is entitled to the amounts awarded under the final arbitral award, in addition to attorneys' fees, litigation costs, and interest. (Dkt. No. 9.)

## II. GOVERNING LEGAL STANDARDS

### A. Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008) (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking

7

default judgment is required to present its application for entry of judgment to the court." *Robertson*, 2008 WL 2519894, at *3.  In its motion for default judgment, "the moving party must '(1) show that the defendant was properly served with a summons and complaint; (2) obtain the entry of default; and (3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service.'" *Sloan v. Transunion, LLC*, 21-CV-0769, 2022 WL 2237639, at *2 (N.D.N.Y. June 16, 2022) (D'Agostino, J.) (citing Fed. R. Civ. P. 55(b); N.D.N.Y. L.R. 55.1, 55.2). When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).

"However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing petitioner's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155.  Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

### B. Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")

The New York Convention "governs the enforcement of arbitral awards stemming from disputes that are 'commercial and . . . not entirely between citizens of the United States.'" *PDV Sweeny, Inc. v. ConocoPhillips Co.*, 14-CV-5183, 2015 WL 5144023, at *4 (S.D.N.Y. Sept. 1, 2015), *amended*, 2015 WL 9413880 (S.D.N.Y. Dec. 21, 2015) (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011)). "The goal of the [New York] Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transaction on the whole." *Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir. 1991) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 507, 520 n.15, 94 S.Ct. 2449, 2457 n.15 (1974). "The [New York] Convention is implemented domestically by the Federal Arbitration Act ('FAA')." *Prodigy Finance Limited v. Zadi-Pauyo*, 19-CV-8317108, 2021 WL 8317108, at *4 (E.D.N.Y. Aug. 5, 2021) (citing *PDV Sweeney, Inc.*, 2015 WL 5144023, at *4); *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) ("Congress implemented . . . the [New York] Convention by enacting Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208.")

"Jurisdiction under the [New York] Convention . . . exists . . . where a party seeks to compel arbitration, enforce an arbitral award, or obtain preliminary relief in aid of arbitration." *Unicom Bulk Traders Ltd. v. Fortune Mar. Enterprises, Inc.*, 08-CV-9710, 2009 WL 125751, at *3 (S.D.N.Y. Jan 20, 2009) (citing *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n.5 (2d Cir. 1989); *Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822, 826 (2d Cir. 1990)). Section 203 of Title 9, United States Code provides that "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or

proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. "An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of [Title 9] may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . ." 9 U.S.C. § 204.

"Within three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207.

### III. ANALYSIS

#### A. Default Judgment

In the Second Circuit, default judgments are generally discouraged in cases brought to confirm arbitral awards; however, in cases where the respondent has elected to participate in neither the arbitration itself nor the subsequent judicial proceedings (as here), district courts in this Circuit have found default judgment to be permissible. As one Untied States magistrate judge from the Eastern District of New York explained,

> [T]he Second Circuit has previously held that "default judgments in confirmation/vacatur proceedings are generally inappropriate." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 109 (2d Cir. 2006) . . . .  Instead, since a petition to confirm an arbitration award typically is accompanied by a record, district courts should treat an unanswered petition to confirm an arbitration award "as an unopposed motion for summary judgment." *D.H. Blair & Co.,* 462 F.3d at 110 . . . .  Nevertheless, courts in [the Eastern District of New York] have held that default judgments are appropriate in the context of a petition for confirmation of an arbitration award where the defendant failed to contest the claims at the arbitration hearing since "the distinction between moving for default judgment and moving for summary judgment is somewhat academic." *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! [v. Jung Sun Laundry Group Corp.,* No. 08 Civ. 2271,] 2009 WL 704723, at *3 [(E.D.N.Y. Mar. 16, 2009)] (noting that "courts in [the Eastern District of New York] have held that a default judgment is appropriate, despite the Second Circuit's

> pronouncement in *D.H. Blair,* where the respondent failed to respond or otherwise appear at both the arbitration hearing *and* the subsequent confirmation proceeding) (emphasis in original); *see also Trs. of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.,* No. 07 Civ. 4211, 2008 WL 4693533, at *3 (E.D.N.Y. Oct. 23, 2008) (where defendant never put forward a case in either the arbitration or judicial phases of the dispute at issue, more stringent review under summary judgment standard does not improve defendant's position); *Trs. of the Unite Here Nat'l Health Fund v. New Age Intimates, Inc.,* No. 07 Civ. 2892, 2008 WL 3833841, at *4 (E.D.N.Y. Aug. 14, 2008) (same).

*Mercury Venture Intern. Ltd. v. DGM Commodities Corp.*, 13-CV-1521, 2015 WL 893652, at *4 (E.D.N.Y. Mar. 2, 2015).

Here, Respondent never put forward a case in either arbitration or this proceeding. *See, supra,* Part I of this Decision and Order. As a result, a more-stringent review under summary judgment would not improve Respondent's position and therefore proceeding with default judgment is appropriate.

After carefully considering Petitioner's motion, the Court is satisfied that Petitioner has met its modest burden of showing that it is entitled to default judgment. The docket establishes that Respondent has not filed a response to the Petition, has not entered an appearance, and has not responded to Petitioner's motion in this action. (*See generally* Docket Sheet.) Petitioner requested, and was granted, the entry of default by the Clerk of Court. (Dkt. Nos. 6, 7.) Further, in its present motion, Petitioner has certified service of the summons and petition (Dkt. No. 9, Attach. 1, at ¶ 3 [Cooke Aff., citing Dkt. No. 5]), and has set forth the salient facts in an affidavit (*see generally* Dkt. No. 9, Attach. 1), including the fact that Respondent is not a minor nor in military service (*id*. at ¶ 8).

In both its Petition and the present motion, Petitioner provided a copy of both the Loan Agreement and the Arbitrator's Final Award (which indicated, among other things, that the

parties entered into a Loan Agreement, that the funds agreed upon were disbursed by Petitioner, that Respondent paid no part of her repayment due to Petitioner under the Loan Agreement, and that, as of the termination of the Loan Agreement on September 14, 2022, Respondent owed $40,895.95 to Petitioner). (Dkt. No. 1; Dkt. No. 1, Attach. 2; Dkt. No. 1, Attach. 3.) Further, Petitioner's counsel certified in an affidavit that outstanding balance, as well as the interest which continued to accrue at an annual rate of 9.27%, remains unpaid. (Dkt. No. 9, Attach. 1, at ¶ 10-11 [Cooke Aff.].) Likewise, the arbitration costs of £4,000, which continued to accrue interest at a rate of 6%, remain unpaid. (*Id*.) These allegations are sufficient to establish Respondent's liability.

With regard to damages, Petitioner has met its burden to establish a valid basis for the damages sought. As mentioned above, Petitioner attached to its present motion the Arbitrator's Final Award, which awarded Petitioner $40,895.95 (plus interest at an annual rate of 9.27%) and £4,000 in arbitration costs (plus interest at an annual rate of 6%). In an affidavit, Petitioner's counsel calculated the interest on the former balance as amounting to $7,114.72 for a total of $48, 010.67 outstanding. (Dkt. No. 9, Attach. 6, at ¶ 1(a)(i) [Portner Aff.].) Likewise, Petitioner's counsel converted the latter balance (i.e., the arbitration costs) to U.S. dollars, as of the date of the issuance of the Final Award, equaling $5,088.00 (*id*. at ¶ 1(b) n.1), and calculated the interest as amounting to $572.92 for a total of $5660.92 outstanding (*id*. at ¶ 1(b)(i).) Therefore, the total amount outstanding from the Final Award itself is $53,671.59.

Finally, as Petitioner's counsel sets out in the affidavit, under the Loan Agreement, Petitioner is entitled to attorneys' fees and other reasonable expenses resulting from a breach of the agreement. (*Id*. at ¶ 3 [citing Dkt. No. 1, Attach. 3].) Petitioner's counsel has certified that Petitioner has accrued $14,654.00 in attorneys' fees and $500 in costs (i.e., the filing fee and cost

of private service of process), and has included the invoice reflecting that billing. (*Id*. at ¶ 4 [citing Dkt. No. 9, Attach. 3]. Accordingly, Petitioner has established a valid basis for the $68,825.59 in total damages sought.

For all of these reasons, the Court grants Petitioner's motion for default judgment and confirms the foreign arbitral award.

### B. The New York Convention

The Court would reach the same ultimate conclusion (i.e., that the Court should confirm the foreign arbitral award) even if it were to treat Petitioner's unanswered Petition as an unopposed motion for summary judgment.

"Under the [New York] Convention, the district court's role in reviewing a foreign arbitral award is strictly limited: 'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting 9 U.S.C. § 207) (citation omitted). In this regard, generally, "a court's review of a foreign arbitral award is a summary proceeding . . ." *Prodigy Finance Limited*, 2021 WL 8317108, at *5.

A party seeking recognition or enforcement of arbitral awards to which the New York Convention applies must supply the duly authenticated original award (or a duly certified copy thereof) and an original or certified copy of the agreement to arbitrate. New York Convention art. II, section 1. Once the required documents are provided by the party seeking confirmation, "the party resisting confirmation bears a heavy burden if it seeks to set aside the arbitration award." *Prodigy Finance Limited*, 2021 WL 8317108, at *4.

13

"[T]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Encyclopedia Universalis, S.A. v. Encyclopedia Britannica, Inc.*, 403 F.3d 85, 89 (2d Cir. 2005) (citing New York Convention art. V, section 1; *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 313 (2d Cir. 1998)). "The showing required to avoid summary confirmance is high." *Encyclopedia Universalis, S.A.*, 403 F.3d at 89 (quoting *Yusef Ahmed Alghanim & Sons, W.L.L.*, 126 F.3d at 19-20).

Under Article V of the New York Convention, the grounds for refusing to recognize or enforce an arbitral award are the following: "(a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . .; or (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . .; or (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .; or (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . .; or (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention art. V, section 1. "Enforcement may also be refused if '[t]he subject matter of the difference is not capable of settlement by arbitration,' or if 'recognition or enforcement of the award would be contrary to the public policy' of the country in which enforcement is sought." *Yusef Ahmed Alghanim & Sons, W.L.L.*, 126 F.3d at 19 (quoting New York Convention art. V, section 2).

"[I]f a petition to enforce an arbitration award is unopposed, a court need not inquire on its own into whether an exception to enforcement applies." *PKT Associates, Inc. v. Granum Group, LLC*, 18-CV-1169, 2018 WL 3392879, at *1 (S.D.N.Y. Jul. 12, 2018) (citing *NAR S.p.A. - Industria Nastri Adesivi v. I.R. Indus.*, 5 F. Supp. 2d 203, 204 (S.D.N.Y. 1998)).

Here, Petitioner has provided the required documents. More specifically, Petitioner has provided a duly certified copy of the original arbitral award (Dkt. No. 1, Attach. 2), and a certified true copy of the Loan Agreement, which includes the agreement to arbitrate (Dkt. No. 1, Attach. 3). Further, Petitioner has provided an affidavit certifying the authenticity of these documents. (Dkt. No. 1, Attach. 1, at ¶¶ 2-3.)

Because Petitioner has provided sufficient documentation, the burden then shifts to Respondent to prove that one of the defenses under the New York Convention applies. In failing to respond, Respondent has failed to create a genuine dispute of material fact regarding whether any of these defenses apply. As stated above, the Court need not make such an inquiry on its own; and the Court does not do so, given the due process that Respondent has been given and the congestion on the Court's docket.

For all of these reasons, the Court grants confirms the foreign arbitral award.

**ACCORDINGLY, it is**

**ORDERED** that Petitioner's motion for default judgment (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Petitioner's Petition to Confirm the Foreign Arbitral Award (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall enter Judgment against Respondent and in favor of Petitioner in the amount of **SIXTY-EIGHT THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS AND FIFTY-NINE CENTS ($68,825.59), plus interest to accrue at the prescribed by 28 U.S.C. § 1961 on the date the Judgment in this action is entered.**

Dated: August 18, 2025
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge